**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MANUEL PARDO, JR.,

        Plaintiff,

vs.     Case No. 3:12-cv-1328-J-32JBT

JOHN PALMER, in his official capacity as
Warden of Florida State Prison,
KENNETH S. TUCKER, in his official capacity
as the Secretary, Florida Department of Corrections,
and DOES 1-50, in their official capacities as
Executioners for the State of Florida,

        Defendants.

## **ORDER**

Plaintiff Manuel Pardo, Jr. is a Florida death row prisoner who is scheduled to be executed on Tuesday, December 11, 2012. On Thursday, December 6, 2012, through counsel, he filed a complaint seeking relief under 42 U.S.C. § 1983 alleging that his execution under Florida's lethal injection protocol will violate his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and his right to equal protection of the law under the Fourteenth Amendment. See Doc. 1 (Complaint). At the same time, Pardo filed a motion for a temporary restraining order, preliminary injunction, and stay of execution (Doc. 3).[1] Defendants, prison officials of

---

[1] Pardo also filed a motion for leave to proceed in forma pauperis (Doc. 2) which the Court now grants, for purposes of this case and on appeal. Various other ministerial motions have been filed and resolved without formal Order. The Clerk will be directed to terminate those motions. Defendants also filed a motion to dismiss and/or for summary judgment (Doc. 7), to which Pardo responded (Doc. 16). The Court has determined to hold that motion in abeyance while Pardo's efforts to stay his execution are under consideration.

the State of Florida, responded in opposition to that motion and both parties filed supplemental papers at the Court's request.  See Order & filings, Docs. 9, 17 & 19.  On Monday, December 10, 2012 at 9:00 a.m., the Court conducted a hearing which included argument on the motions and limited testimony from witnesses.  The transcript of that hearing is being prepared now and will be filed later today.  The Court's final decision relies in part on the argument and testimony heard at the hearing and it is incorporated by reference in this opinion.  (Any review of this decision would be aided by reading the transcript.)  In the last few days, the Court has undertaken extensive study of the filings, exhibits, and the relevant case law.  Based on that review, the Court substantially prepared this Order in advance of the hearing but withheld reaching a final decision to see if consideration of the argument or testimony would require a different result.  It did not; this decision therefore issues without further delay to allow Pardo to seek emergency appellate review if he so chooses.

Because the Court finds Pardo has failed to show how any of his claims are distinguishable from those considered and rejected by the Eleventh Circuit in Ferguson v. Warden, No. 12-15191, 2012 WL 4946112 (11th Cir. Oct. 18, 2012), he cannot demonstrate a substantial likelihood of success on the merits.[2]  Therefore, as further explained below, Pardo's motion for a temporary restraining order, preliminary injunction, and stay of

---

[2]The Eleventh Circuit's Ferguson opinion is an unpublished decision and is therefore not binding precedent.  However, it is the Eleventh Circuit's most recent decision in this area and, more importantly, consisted of a review of the exact claims Pardo is raising under the exact same new September 4, 2012 protocol.  The Court therefore relies on it heavily as persuasive authority.  See 11th Cir. R. 36.2.

2

execution is denied.

**I.     Procedural History**

Pardo was indicted for nine murders based on five separate episodes occurring between January and April of 1986. At trial, the jury found him guilty of all nine murders and recommended the death penalty in each case. The trial court followed the jury's recommendations, imposing a death sentence for each murder. On direct appeal, the Florida Supreme Court affirmed the convictions and the sentence of death. Pardo v. State, 563 So. 2d 77, 81 (Fla. 1990) (per curiam), cert. denied, Pardo v. Florida, 500 U.S. 928 (1991). The state circuit court denied a motion for post-conviction relief, and the Florida Supreme Court affirmed that denial and denied a petition for writ of habeas corpus. Pardo v. State, 941 So. 2d 1057, 1073 (Fla. 2006) (per curiam). Pardo sought habeas relief in the United States District Court for the Southern District of Florida, which was denied. See Pardo v. McDonough, Case No. 1:07-cv-22867-JIC, Order Denying Petition for Writ of Habeas Corpus (Doc. 15), aff'd, Pardo v. Sec'y, Fla. Dep't of Corr., 587 F.3d 1093, 1106 (11th Cir. 2009), cert. denied, 130 S.Ct. 3334 (2010), reh'g denied, 131 S.Ct. 38 (2010).

Florida Governor Rick Scott signed a death warrant on October 30, 2012, and scheduled Pardo's execution for December 11, 2012. Pardo filed a successive motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.851 (Case No. F86-014719A, F86-012910A) in the state circuit court, which was denied on November 14, 2012. He appealed and on December 4, 2012, the Florida Supreme Court affirmed the denial of the successive post-conviction motion and the mandate issued. Pardo v. State, No. SC12-2350 (Fla. Dec. 4, 2012). On December 7, 2012, Pardo filed a petition for a writ of certiorari

and an application for stay of execution with the United States Supreme Court which, when last checked, remain pending. Petition for Writ of Certiorari, Application for Stay, Pardo v. Florida, (Nos. 12-7628 & 12A579) (U.S. Dec. 7, 2012).

## II.     Discussion

"A stay of execution is equitable relief which [the] Court may grant only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." Ferguson, 2012 WL 4946112, at *1 (quoting DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011)). If Pardo cannot satisfy his burden of demonstrating a substantial likelihood of success as to at least one of his claims, his motion must be denied. See Ferguson, 2012 WL 4946112, at *4; Valle v. Singer, 655 F.3d 1223, 1225 (11th Cir. 2011).

### A.     Substantial likelihood of success on the merits

#### 1.     Pardo's Eighth Amendment claims

Pardo claims Florida's three-drug lethal injection protocol will subject him to an unnecessary risk of serious pain and suffering in violation of the Eighth Amendment's proscription against cruel and unusual punishment. Florida's procedure, most recently amended on September 4, 2012, calls for the serial intravenous administration of the following three chemical substances: 5000 milligrams of pentobarbital sodium, a barbiturate; followed by 100 milligrams of vecuronium bromide, a neuromuscular blocking agent or paralytic; followed by 240 milliequivalents of potassium chloride, which causes cardiac arrest and death. See Doc. 1, Exhibit A (Florida Department of Corrections Execution by Lethal

Injection Procedures ("Florida Protocols"); Ferguson v. Palmer, Case No. 3:12-cv-1036-J-99MMH-JBT, Doc. 32 (Oct. 10, 2012) at 8-9, aff'd, Ferguson v. Warden, 2012 WL 4946112 (11th Cir. Oct. 18, 2012) (per curiam).

Pardo's Eighth Amendment challenges relate to the specific drugs used in Florida's protocol, claiming both that the use of pentobarbital (the first drug) and the subsequent administration of vecuronium bromide (the second drug) create an unnecessary risk of improper sedation and "agonizing pain"; that Florida's implementation of the protocol fails to include appropriate safeguards, particularly as to the assessment of consciousness; and that Florida's September 4, 2012 decision to retain a three-drug protocol instead of adopting a more humane, increasingly utilized one-drug protocol shows that Florida is ignoring evolving standards of decency, thereby posing an objectively intolerable risk of pain.

To state a claim under the Eighth Amendment, Pardo must demonstrate that Florida is being "deliberately indifferent . . . to a condition that poses a substantial risk of serious harm to him." Ferguson, 2012 WL 4946112, at *1 (quoting DeYoung, 646 F.3d at 1325). For an inmate facing execution by lethal injection, the standard requires him to show "an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." Ferguson, 2012 WL 4946112, at *1-2 (quoting DeYoung, 646 F.3d at 1325). "The risk must be sure or very likely to cause . . . needless suffering." DeYoung, 646 F.3d at 1325 (quoting Baze v. Rees, 553 U.S. 35, 50 (U.S. 2008) (plurality opinion)) (emphasis in original).

The Eleventh Circuit has "consistently held" that claims challenging the method of execution must be timely raised. Ferguson, 2012 WL 4946112, at *2 (citing cases). In

5

Florida, this means within four years of their accrual. Id. (citing Van Poyck v. McCollum, 646 F.3d 865, 867 (11th Cir. 2011)). Method of execution claims accrue on "the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." Id. (quoting McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008)). In Ferguson, the Eleventh Circuit rejected the suggestion that either Florida's June 2011 protocol change substituting pentobarbital for sodium thiopental or the September 4, 2012 protocol change substituting vecuronium bromide for pancuronium bromide, constituted a substantial change that would restart the statute of limitations clock. Ferguson, 2012 WL 4946112, at *2. Thus, it appears that, like Ferguson's, Pardo's claims are barred by Florida's four-year statute of limitations.[3]

However, even if Pardo's Eighth Amendment claims were not time-barred, he cannot demonstrate a substantial likelihood of success on any of them. In Ferguson, the Eleventh

---

[3]In addition to the statute of limitations, there are additional bases upon which Pardo's claims may be barred (such as the doctrine of laches). However, the Court determines that it should nonetheless address Pardo's claims on the merits for several reasons. First, although the Eleventh Circuit considered and rejected these same claims in Ferguson, Ferguson's execution did not go forward for other reasons. Thus, Pardo is now scheduled to be the first Florida inmate to be executed using this new protocol, which was only adopted three months ago. Although at least one other state (Oklahoma) uses this same sequence of drugs, the quantities called for under Florida's protocol are different so, in fact, this may well be the first time any prisoner has been executed under this precise regimen. Additionally, when the Florida Supreme Court considered (and rejected) Pardo's claims just last week, it characterized some aspects of his challenge to the lethal injection regime as a "new" Eighth Amendment claim. See Pardo v. State, No. SC12-2350, slip op. at 9 (Fla. Dec. 4, 2012), petition for cert. filed, No. 12-7628 (U.S. Dec. 7, 2012). Moreover, while Eleventh Circuit precedent appears overwhelmingly stacked against Pardo's claims both procedurally and substantively, the Eleventh Circuit in Arthur v. Thomas, 674 F.3d 1257 (11th Cir. 2012), recently remanded an Alabama lethal injection case for further evidentiary development and, although the record and procedural posture here are different, that decision creates at least the suggestion that consideration on the merits is appropriate here.

Circuit reiterated that Florida's "use of sodium pentobarbital in the lethal injection sequence does not violate the Eighth Amendment." Id. at *2 (citing Valle, 655 F.3d at 1225). The Court likewise held that the substitution of vecuronium bromide for pancuronium bromide as the second drug in the three-drug sequence was "merely a substitution of one bromide paralytic for another;" Ferguson, who had made the same contentions as Pardo does here regarding the possibility of improper sedation resulting from the sequencing of these two drugs, had failed to demonstrate how this protocol would subject him to a substantial risk of serious harm. Ferguson, 2012 WL 4946112, at *2; Ferguson, Case No. 3:12-cv-1036-99MMH-JBT, Doc. 32 at 19-30. The Court also held that Ferguson's challenges to the implementation of the 2012 protocol failed to meet the required standard, explaining that his concerns about insufficient safeguards and the execution team members' lack of medical training were without support and that his "'if-then' hypotheticals [did] not amount to concrete evidence of an 'objectively intolerable risk of harm' necessary to establish an Eighth Amendment violation." Id. at *3 (citing Baze, 553 U.S. at 50). The Ferguson Court finally rejected his claim that "evolving standards of decency" required Florida to adopt a one-drug protocol as other states have recently done, explaining that, under Baze, "an inmate cannot successfully challenge a three-drug protocol merely by suggesting that the one-drug protocol is a feasible or superior option; he must also show that the current protocol creates a 'demonstrated risk of severe pain,' and that the proposed alternative method significantly reduces the risk of that pain." Id. (citing Baze, 553 U.S. at 61). Thus, in Ferguson, both my colleague, the Honorable Marcia Morales Howard (who wrote a thorough 60 page opinion addressing each and every contention), and the Eleventh Circuit in its opinion affirming hers,

7

have considered and rejected each of the same Eighth Amendment claims that Pardo raises here.[4]  See Ferguson, 2012 WL 4946112; Ferguson, Case No. 3:12-cv-1036-99MMH-JBT, Doc. 32.

Recognizing that this case would likely turn on Pardo's ability to differentiate his claims from Ferguson, the Court requested additional briefing "on the issue of whether this case is distinguishable from Ferguson."  See Doc. 9 (case citations omitted).  Pardo's responsive memorandum (Doc. 17) does not even attempt to distinguish Ferguson but largely repeats arguments which were rejected in Ferguson.  The Court has also compared the declarations of Pardo's expert, Dr. Mark Heath, as filed in this case and in Ferguson and finds that he has not raised anything here not thoroughly considered in Ferguson.[5]  In the new declaration, Dr. Heath has expanded on some of his opinions as to why he believes Florida's use of pentobarbital is not an appropriate choice for the anesthetizing drug, in essence explaining that the drug's slow rate of onset creates a substantial and serious risk that Pardo will not be fully unconscious when the excruciatingly painful second and third drugs are administered.  However, Florida's protocol does not set a time limit for the administration of these drugs; rather, the protocol requires that the first drug take effect

---

[4]At the hearing, counsel for Pardo focused more heavily than in the briefing on the issue of whether evolving standards of decency require Florida to adopt a one-drug protocol; the reader is referred to the transcript for that discussion.

[5]The Court reviewed the two declarations side by side.  Virtually nothing from the Ferguson declaration was omitted, but several new paragraphs were added to create the declaration in Pardo, focusing on Dr. Heath's already rejected criticism of the use of pentobarbital.  Dr. Heath's Pardo declaration is attached as an appendix to this opinion, with the new information underlined.

before the second one is administered: following the administration of 5000 milligrams of pentobarbital and 20 milliliters of saline, the Team Warden assesses whether the inmate is unconscious. If he is not unconscious, the inmate is given an additional administration of 5000 milligrams of pentobarbital and another 20 milliliters of saline. See Florida Protocols (Doc. 1, Exhibit A) at 10-11. The Florida Supreme Court reviewed the same Heath declaration[6] and found that "[n]othing within [it] alleges that Pardo will not be unconscious or that he will be insufficiently anesthetized at the time the other two drugs are introduced." Pardo v. State, No. SC12-2350, slip op. at 10 (Fla. Dec. 4, 2012). Thus, the Florida Supreme Court rejected Pardo's "slow rate of onset" challenge to Florida's use of pentobarbital, finding this claim was based on "pure speculation and conjecture." Id.; see also Ferguson, Case No. 3:12-cv-1036-99MMH-JBT, Doc. 32 at 27-28. This Court likewise concludes that Pardo is unlikely to prevail on this issue.[7]

Pardo additionally argues that even if the amount of pentobarbital is theoretically sufficient to anesthetize him, only a trained anesthesiology practitioner using sophisticated medical devices could accurately assess whether and when he has actually reached a state of unconsciousness.[8] However, Florida's use of pentobarbital has been the subject of a

---

[6]Pardo's complaint states the declaration submitted here was originally submitted to the Florida Supreme Court. See Complaint (Doc. 1) at ¶ 45.

[7]The transcript of the hearing contains the testimony of Dr. Roswell Lee Evans, Jr., Dean of the Harrison School of Pharmacy at Auburn University, discussing this issue.

[8]It would violate the Eighth Amendment to administer vecuronium bromide and potassium chloride to a conscious inmate. See, e.g., Baze, 553 U.S. at 53 ("It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of

great deal of evidentiary development in state court, including this issue of the protocol's method of assessing consciousness. See Valle v. State, 70 So. 3d 530, 538-46 (Fla. 2011) (rejecting challenge to use of pentobarbital following evidentiary hearing in trial court); Lightbourne v. State, 969 So. 2d 326, 346-52 (Fla. 2007) (addressing and rejecting Dr. Heath's contentions that only trained medical personnel can assess consciousness); Baze, 553 U.S. at 58-60 (plurality opinion) (rejecting contention that medical professionals and equipment are required to assess consciousness in context of lethal injection); Valle, 655 F.3d at 1237) (citing Baze for same proposition and recognizing that Florida's protocol has been upheld against maladministration claims). Moreover, Judge Howard comprehensively examined and upheld the 2011 change in Florida's protocol that substituted pentobarbital for sodium thiopental; the Eleventh Circuit adopted her opinion as it own in Valle, 655 F.3d at 1225, and reaffirmed its position again just recently in Ferguson, 2012 WL 4946112. The Eleventh Circuit has also approved Alabama's and Georgia's use of pentobarbital in their lethal injection protocols. See Powell (Williams) v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011) (holding that evidence did not demonstrate Alabama's use of pentobarbital creates a substantial risk of serious harm); DeYoung v.Owens, 646 F.3d 1319 (11th Cir. 2011) (affirming Georgia's use of pentobarbital). Cf. Arthur, 674 F.3d 1257 (remanding for evidentiary hearing on Alabama's lethal injection protocol).[9]

---

pancuronium bromide and pain from the injection of potassium chloride.").

[9]Pardo has provided a partial transcript of the evidentiary hearing held in Arthur v. Thomas, Case No. 2:11-cv-438-MEF (M.D. Ala. Oct. 18, 2012). See Doc. 17, Ex. A. At the hearing, defendants provided an entire transcript. Def's Hearing Ex. 2. The Alabama district court has not yet ruled.

Because Pardo would be the first inmate to be executed under Florida's revised 2012 protocol, the Court looked to see whether the change in the protocol-- the substitution of vecuronium bromide for pancuronium bromide as the second drug in the three-drug protocol-- raises any Eighth Amendment concerns. Pardo, through his expert Dr. Heath, focuses almost entirely on the first drug, pentobarbital, and only briefly touches upon the second. In Ferguson, the Eleventh Circuit found that the use of vecuronium bromide as the second drug did "not constitute a substantial change, as it is merely a substitution of one bromide paralytic for another." Ferguson, 2012 WL 4946112, at *2. It also held that Ferguson "failed to demonstrate how Florida's use of vecuronium bromide subjects him to a substantial risk of serious harm." Id. (citation omitted). "Ferguson's speculation as to the parade of horribles that could possibly occur during his execution does not meet the burden of proof required by the Eighth Amendment." Id. (citation omitted) (emphasis in original). See also, Ferguson, Case No. 3:12-cv-1036-99MMH-JBT, Doc. 32 at 23-30. Nothing in the record here, including the hearing the Court held (where this issue was specifically addressed) casts doubt on the applicability of that finding to Pardo's case.

Pardo has not raised any issue that was not considered and rejected in Ferguson. Thus, Pardo has failed to demonstrate a substantial likelihood of success as to any of his Eighth Amendment claims.

### 2. Pardo's Fourteenth Amendment equal protection claim

Pardo additionally alleges that the execution team may deviate from the written protocol with regard to assessing consciousness, resulting in him being treated differently from other inmates executed through legal injection. "'To state an equal protection claim,

11

[Pardo] must show that the State will treat him disparately from other similarly situated persons.'" Ferguson, 2012 WL 4946112, at *3 (quoting DeYoung, 646 F.3d at 1327). However, as found in Ferguson, "[u]nder Florida's 2012 protocol, all death row inmates facing execution will be subject to the same sequence of drugs, the same procedures, and the same safeguards in the execution process." Id.  Pardo has failed to point to any evidence that he would be treated differently from any other death row inmate subject to this protocol, nor has he demonstrated anything more than the abstract possibility that prison officials will fail to follow the protocol in his case.  He therefore has failed to demonstrate a substantial likelihood of success as to his Fourteenth Amendment equal protection claim.

### B. Remaining prongs of the standard

Because the Court has found that Pardo cannot demonstrate a substantial likelihood of success as to either his Eighth or Fourteenth Amendment clams, he cannot prevail on a motion to stay and the Court therefore need not determine whether any of the remaining three factors weigh in his favor. See Ferguson, 2012 WL 4946112, at *4; Valle, 655 F.3d at 1225.

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff Manuel Pardo, Jr.'s Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay of Execution (Doc. 3) is **DENIED**.

2. The Clerk shall telephonically notify counsel for the parties of the entry of this Order.

3.	The Clerk shall immediately notify the following capital case points of contact of this Order: (1) the United States Court of Appeals for the Eleventh Circuit; (2) the Governor's Office in Tallahassee, Florida; (3) the Secretary of the Florida Department of Corrections; (4) the Warden of Florida State Prison; and (5) the Attorney General's Office in Tallahassee, Florida.

4.	The Clerk shall immediately provide by email a copy of this Order to the Warden of Florida State Prison who shall immediately provide a copy of this Order to Mr. Manuel Pardo, Jr.

5.	The Clerk will immediately forward a copy of the transcript of today's hearing to counsel of record and all parties listed in paragraph 3 as soon as it is available. The Warden should also immediately provide it to Mr. Pardo.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of December, 2012 at 1:10 p.m.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies (w/Appendix):

counsel of record

13